UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **09 - 22678** CIV.

LINDEL NELSON WATSON,

      Plaintiff,

vs.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINES,

      Defendant.

_____/

CIV-SEITZ

MAGISTRATE JUDGE
O'SULLIVAN

FILED by ___ D.C.

SEP 0 9 2009

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

## NOTICE OF REMOVAL

**COMES NOW** Defendant, **CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES** ("CARNIVAL"), by and through undersigned counsel, and hereby files this, its Notice of Removal, pursuant to 28 U.S.C. § 1441, *et seq.*, and 9 U.S.C. §205, and respectfully states as follows:

    1.     LINDEL NELSON WATSON ("WATSON") is a Colombian seaman who alleges he was injured on or about August 1, 2006 while working for CARNIVAL on board one of its Panamanian-flagged vessels.

    2.     CARNIVAL is a Panamanian corporation with its principal place of business in Miami-Dade County, Florida.

    3.     WATSON was employed by CARNIVAL under a "Seafarer's Agreement" (hereinafter the "Agreement"), a copy of which is attached hereto as Exhibit "A".

    4.     Paragraph 6 of the Agreement acknowledges that the Agreement constitutes a commercial legal relationship between the Seafarer and his employer, Carnival.

5.     Paragraph 7 of the Agreement provides that any and all disputes arising out of or in connection with the Agreement shall be referred to and resolved by arbitration under the Arbitration Rules of the International Chamber of Commerce. The place of the arbitration shall be in London, England; Monaco; Panama City, Panama; or Manila, Philippines, whichever is closer to the Seafarer's home country, in this case, Panama.

6.     The Agreement constitutes an arbitration agreement falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention").

7.     On August 18, 2009, WATSON served CARNIVAL with a Complaint in State Court in the Eleventh Circuit of Miami-Dade County, Florida, Case No. 09-51843 CA 08, asserting claims for Jones Act negligence and maintenance and cure. A copy of the Complaint and all other pleadings, process, and orders served on Defendant CARNIVAL in this case are attached hereto as Exhibit "B," pursuant to 28 U.S.C. §1446(a).

8.     This suit is an action of which this Court has original jurisdiction under the provision of 9 U.S.C. § 202, *et seq.*, and one that may be removed to this Court under the provisions of 9 U.S.C. § 205, in that it is an action arising under the laws of the United States and relating to an arbitration agreement falling under the Convention. The grounds for removal are as follows:

   a.     There has been no trial of the state court action.

   b.     Plaintiff WATSON is a citizen of Columbia.

   c.     Defendant CARNIVAL CORPORATION is a Panamanian corporation with its principal place of business in Miami-Dade County, Florida.

   d.     The underlying employment Agreement requires arbitration in London, England; Monaco; Panama City, Panama; or Manila, Philippines, whichever is closer to the Seafarer's home country of Columbia.

e.    Because the Agreement is between a foreign corporation and a foreign seaman and because the Agreement provides for arbitration, this dispute falls under the provisions of the Convention and may be removed to federal court.  See 9 U.S.C. Section 202, *et seq.*

f.    Both the United States and Panama are signatories to the Convention and are bound by its arbitration provisions.

8.    Accordingly, this Court has jurisdiction over this action, and this case is removed to the Southern District of Florida pursuant to U.S.C. Section 205.

9.    CARNIVAL files and presents herewith the sum of $350.00 as required by 28 U.S.C. Section 1446.

## MEMORANDUM OF LAW

The removal jurisdiction of federal district courts extends to cases over which they have original jurisdiction. ***Francisco v. Stolt Achievement MT,*** 293 F.3d 270, 272 (5th Cir. 2002)(*citing* 28 U.S.C. § 1441(a)). "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." *Id.* (*citing* 28 U.S.C. § 1441(b)). "Under § 203 of the Convention Act, '[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States, notwithstanding the savings to suitors clause, under §205 of the Convention Act: Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.'" *Id.*

A party's request to a federal district court to compel arbitration must be granted where 1) there is an agreement in writing to arbitrate the dispute; 2) the agreement provides for arbitration in the territory of a signatory of the Convention; 3) the agreement to arbitrate arises out of a commercial legal relationship; and 4) there is a party to the agreement who is not an American citizen. 9 U.S.C. §§ 201-208; *Francisco v. Stolt Achievement MT,* 293 F.3d 270, 272 (5th Cir. 2002); *Bautista v. Star Cruises, 396 F.3d 1289 (11th Cir. 2005).*

Therefore, the elements necessary to invoke the Convention and to compel arbitration are met: WATSON, a foreign citizen and Columbian national, signed a written employment contract stating that all claims and disputes arising from his employment, including personal injury claims, were subject to arbitration in Panama. The employment contract states that it shall be governed by the law of the Flag State. Panama and the United States are both signatories to the Convention. *See,* 9 U.S.C. § 201 note (notes following text of Convention indicating signatories); *Francisco,* 293 F.3d at 273. As arbitration is proper, this Court has jurisdiction pursuant to the Convention and CARNIVAL's removal of this action from state court is proper and valid.

Accordingly, this Court has jurisdiction over this action, and this case is removed to the Southern District of Florida, pursuant to 9 U.S.C. § 205.

CARNIVAL files and presents herewith the sum of $350.00.

WHEREFORE, Defendant, CARNIVAL CORPORATION, moves this Court for an Order that the action now pending against it in the Eleventh Judicial Circuit, in and for Miami-Dade County, described above, be Removed to this Court and thereafter this action proceed therein.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via telefax & U.S. Mail this _9th_ day of September, 2009 to:   Tonya J. Meister, Esq., MEISTER LAW, LLC, Courthouse Tower, Suite 750, 44 West Flagler Street, Miami, FL 33130.

JOHN M. MITCHELL, ESQ.
CARNIVAL CORPORATION
Attorney for Defendant
3655 N.W. 87th Avenue
Miami, Florida 33178-2428
Tel. (305) 599-2600 Ext. 64900
Direct Line: (305) 406-4900
Facsimile:  (305) 406-4732

By_____
JOHN M. MITCHELL, ESQ.
FLA. BAR NO. 0032808

## SERVICE LIST

LINDEL NELSON WATSON vs. CARNIVAL CORPORATION, d/b/a CARNIVAL CRUISE LINES

CASE NO. _____

TONYA J. MEISTER, ESQ.
FBN: 0629243
MEISTER LAW, LLC
Attorney for Plaintiff
Courthouse Tower, Suite 750
44 West Flagler Street
Miami, Florida 33130
Telephone:  (305) 590-5570
Facsimile: (305) 675-3787

JOHN M. MITCHELL, ESQ.
FBN: 0032808
CARNIVAL CORPORATION
Attorney for Defendant
3655 N.W. 87th Avenue
Miami, Florida  33178
Telephone: (305) 599-2600 Ext. 64900
Facsimile:  (305) 406-4732
Direct Line:  (305) 406-4900
Federal Court Fax (305) 406-5347

## VERIFICATION

STATE OF FLORIDA      )
                             ) SS.

COUNTY OF DADE     )

      JOHN M. MITCHELL, ESQ., being first duly sworn, states that he is counsel for

CARNIVAL CORPORATION, and that all the allegations in the Notice of Removal are true and

correct to the best of his knowledge and belief.

 

                                      _____
                                      JOHN M. MITCHELL, ESQ.

STATE OF ___*FLORIDH*___ )
                             ) SS:

COUNTY OF ___*MIAMI · DADE*___ )

      The foregoing was acknowledged before me on this ___*9th*___ day of September, 2009, by

JOHN M. MITCHELL, ESQ., who is personally known to me and did not take an oath.



                                    NOTARY PUBLIC

                             ___*DONNA J TRESTER*___
                                  (print name)

DONNA J. TRESTER
MY COMMISSION # DD 754549
EXPIRES: March 17, 2012
Bonded Thru Notary Public Underwriters

# CONTRATO DE MARINERO
# CARNIVAL CRUISE LINES

Habiendo presentado la solicitud de empleo el Marinero cuyo nombre aparece a continuación a Carnival Corporation, cuyo nombre comercial es Carnival Cruise Lines ("CCL"), y habiendo considerado CCL dicha solicitud, se celebra el presente Contrato de Marinero entre CCL y el Marinero, en conformidad con los términos y condiciones que a continuación aparecen. Cualesquiera otros convenios, acuerdos o entendimientos referentes a los términos de contratación laboral quedan por el presente anulados y sustituidos, y ninguna enmienda ni excepción a esta disposición se considerará válida. El Marinero no se basará en ninguna declaración ni promesa, ya sean verbales o por escrito, que contradigan el Contrato de Marinero en lo que concierna a salarios, propinas y demás términos y condiciones del servicio. Tampoco el Marinero se basará en promesa alguna, ya sea verbal o por escrito, que contradiga el acuerdo de que la contratación laboral del Marinero es a voluntad de las partes.

1.      El Marinero **LINDEL ARVIN NELSON WATSON,  CREW # 226046**
acepta trabajar en el puesto de **STATEROOM STEWARD**
a bordo de cualquier buque que se le asigne operado por CCL o por cualquiera de sus compañías afiliadas, independientemente de la clase u ubicación del buque asignado. CCL se reserva el derecho de cambiar el puesto asignado al Marinero en cualquier momento y sin previo aviso.   Una vez que el Marinero ha sido asignado a un buque, permanecerá asignado únicamente a ese buque, a menos que y hasta que sea reasignado a otro buque, a la discreción exclusiva de CCL. CCL se reserva el derecho de cambiar el buque asignado al Marinero en cualquier momento y sin previo aviso.

2.      El presente Contrato de Marinero entrará en vigor cuando el Marinero se presente a trabajar en un buque asignado en proceso de navegación. Las partes acuerdan que las relaciones de contratación entre ellos se regirán por los términos del presente Contrato comenzando inmediatamente en la fecha en que el Marinero se inscriba a bordo del buque asignado después de firmar el presente Contrato y continuando por un período de tiempo que no excederá de un período máximo de servicio de 10 meses. El presente Contrato terminará de forma automática sin previo aviso inmediatamente después de que el Marinero se desembarque de forma no programada del buque asignado si el Marinero desembarca del mismo por razón alguna, que incluye licencia personal no programada, enfermedad o lesión por más de 24 horas continuas, pero sin limitarse a éstas.  El presente Contrato también terminará sin previo aviso inmediatamente después que el Marinero no se encuentre apto o capaz de servir en el puesto establecido al comenzar un nuevo viaje. Si el Marinero permanece en el buque asignado después del comenzar un nuevo viaje, lo hará como huésped y no se le consideraría más ser miembro de la tripulación del buque. No se le restablecerá al Marinero su condición como miembro de la tripulación sino hasta que el Marinero de hecho vuelva a servir en su puesto designado. Además, el presente Contrato estará suspendido por todo período que el buque asignado no esté en proceso de navegación, lo cual incluye tiempo en diques secos, tiempo fuera de servicio para fines de reparación o mantenimiento, o si el buque aún no ha sido puesto en servicio. No obstante cualquier otra disposición que contenga el Contrato de Marinero, éste se podrá terminar de inmediato a voluntad tanto de CCL como del Marinero al entregar una notificación verbal o escrita de terminación o renuncia.

3. A.      El derecho del Marinero a recibir salario alguno está condicionado a que de hecho firme y se inscriba como miembro de la tripulación del buque asignado en el puesto designado mientras el buque esté en proceso de navegación.

3. B.      Al Marinero se le pagará un salario de $      1.6071      dólares por cada día de trabajo, incluyendo horas extraordinarias. Esta tasa diaria equivale a un salario mensual de $      48.7500      dólares. Una semana de trabajo consiste en 42 horas básicas y 28 horas extraordinarias, independientemente de que las horas extraordinarias (overtime) se trabajen o no, lo cual resulta en una semana laboral compuesta de un total de 70 horas.  El Marinero también recibirá pago por vacaciones a una tasa de un día por cada once días trabajados.

3. C.      Este subapartado 3(C) no aplicará a ningún Marinero que pueda recibir propinas o gratificaciones de parte de pasajeros o de otros Marineros. Este subapartado 3(C) tampoco aplicará a ningún Marinero que trabaje en gerencia o en

Rev. 23/mayo/05 - Arbitraje

Iniciales

**EXHIBIT**

*A*

capacidad de Jefe de Departamento. Sujeto a estas excepciones, las horas extraordinarias adicionales (extra overtime) se componen de las horas que se trabajen en exceso de 70 horas por semana de acuerdo con los expedientes llevados por CCL. Al Marinero se le pagarán $ N/A dólares por hora extraordinaria adicional trabajada, pero se entiende y acuerda que el Marinero no tiene derecho ni le corresponde trabajar ni a ser asignado a trabajar horas extraordinarias adicionales (extra overtime), las cuales se asignan a discreción de CCL "según sea necesario". En caso de que el Marinero crea que ha trabajado más horas que las documentadas en los expedientes de horas del Marinero o de CCL, o que se le deba algún salario devengado, el Marinero tiene que notificarlo por escrito a su supervisor y a su jefe de departamento antes de que termine el viaje en el cual se trabajaron las horas adicionales. Adicionalmente, el Marinero tiene que cumplir con los procedimientos de resolución de conflictos de salario que contiene el Documento de Reconocimiento y Verificación del Formulario de Pago del Salario el cual el Marinero debe llenar antes de haber terminado el viaje en cuestión.

3. D.     CCL no hace promesa, garantía ni compromiso, y el Marinero acepta que no espera ni anticipa que CCL le pague gratificación ni propina alguna como remuneración bajo ninguna circunstancia. En caso de que un Marinero que pueda percibir propinas a causa de su puesto, trabaje en virtud el presente Contrato durante un período en cual el barco esté fuera de servicio regular por cualquier razón, tal como en dique seco, durante un trayecto transoceánico o participando en funciones inaugurales, o que el Marinero esté trabajando pero no a bordo del barco, se le pagará a la tasa de $ 35.00 dólares por cada día de trabajo. En caso de que se pague el salario enunciado en este subapartado, todas las disposiciones del anterior subapartado 3.B, con la excepción de las contenidas en la primera oración, seguirán aplicando con plena fuerza y vigor.

3. E.     Si el Marinero se enferma, lesiona, no está apto o no puede trabajar durante un viaje, su derecho a salarios no devengados se extenderá solamente hasta el final del viaje en el cual el Marinero finaliza su servicio. En caso de que el Marinero esté fuera de servicio debido a enfermedad o lesiones, CCL se reserva el derecho de brindarle tratamiento médico a bordo de su buque o en tierra, ya sea en el puerto base del buque, un puerto regular de escala o en la nación donde viva el Marinero, a la discreción exclusiva de CCL, no obstante la terminación automática del presente Contrato en tales circunstancias.

3. F.     En caso de que el Marinero regrese a trabajar después de que el presente Contrato haya terminado automáticamente en conformidad con el párrafo 2, entonces se considerará que el regreso del Marinero a la labor activa señalará el comienzo de un nuevo Contrato de Marinero por separado conforme a los mismos términos y condiciones que contenga el presente Contrato, y dichos términos tendrán fuerza y vigor hasta el momento en que se celebre un nuevo Contrato de Marinero.

3. G.     Si la asignación de trabajo programado al Marinero cae durante un período de dique flotante o dique seco, el Marinero puede ser puesto fuera de servicio del buque asignado antes de dicho período de dique flotante o dique seco, y de ser así, no estará contratado ni empleado por CCL durante dichos períodos. Si el Marinero permanece en el buque durante dichos períodos, lo hace como un huésped de negocios hasta que el buque vuelva a navegar.

4.     El Marinero reconoce que como tal se le exige en todo momento obedecer y cumplir con las reglas y reglamentos del buque asignado, del Folleto para el Equipo Carnival (Team Carnival Handbook), así como todas las demás reglas, reglamentos y normas verbales y escritos de CCL y/o del operador del buque asignado y/o del mando del buque asignado. Toda infracción de cualquiera de tales reglas, políticas, procedimientos y/o normas puede resultar en una acción disciplinaria, incluyendo hasta la terminación automática del contrato laboral. El presente Contrato de ninguna manera disminuye ni modifica los deberes que el Marinero tiene independientemente como tal de cumplir con todas las dichas reglas, reglamentos, políticas, procedimientos y/o normas.

5.     El presente Contrato de Marinero constituye el único y exclusivo contrato laboral entre las partes. No existen previos ni presentes acuerdos, declaraciones ni entendimientos, verbales ni por escrito, que obliguen a las partes, a no ser que las contenga expresamente el presente Contrato de Marinero. Ninguna modificación ni cambio del presente Contrato de Marinero será válido ni obligará a las partes a menos que esté por escrito y firmado por la parte o las partes interesadas en quedar obligadas por el mismo.

6.     Relación Legal Comercial. El Marinero y la Línea de Crucero reconocen y aceptan que la contratación laboral del Marinero con CCL constituye una relación legal comercial entre las partes.

Rev. 23/mayo/05 - Arbitraje     Iniciales

7.     Arbitraje. Todos los conflictos que surjan a raíz del presente Contrato o en conexión con el mismo, incluyendo todo

aspecto relativo a su existencia, validez o terminación, o el servicio del Marinero en el buque, será referido a arbitraje y finalmente resuelto a través del mismo, conforme a las Reglas de Arbitraje de la International Chamber of Commerce, cuyas Reglas se consideran incorporadas por referencia a esta cláusula. El número de árbitros será uno. El lugar del arbitraje será Londres en Inglaterra, Mónaco, la Ciudad de Panamá en Panamá, y Manila en Filipinas, la que esté más cerca del país donde viva el Marinero. El Marinero y la Línea de Crucero deben arbitrar en la jurisdicción designada, con exclusión de todas las demás jurisdicciones. El idioma de los procedimientos de arbitraje será el inglés. Cada una de las partes deberá costear sus propios honorarios de abogado, y cada una pagará la mitad de los costos de arbitraje. El Marinero acepta comparecer en los exámenes médicos que relacionen los doctores designados por CCL en especialidades pertinentes a las demandas que el Marinero entable, y de lo contrario las partes acuerdan renunciar a todo derecho a que una parte pueda exigirle información a la otra.

8.        Derecho aplicable. El presente Contrato se regirá por las leyes de la bandera del buque al cual el Marinero esté asignado al momento en que el derecho de iniciar la acción sea ejercitable, y todos los conflictos que surjan por virtud o en conexión con dicho Contrato o con el servicio del Marinero en el buque se resolverán de acuerdo con dichas leyes, sin que importen los principios de conflictos de leyes en virtud de las mismas. Las partes se ciñen a estas leyes que serán aplicables no obstante toda demanda por negligencia, falta de condiciones para navegar, mantenimiento, cura, incumplimiento de proporcionar pronta, apropiada y adecuada atención médica, salarios, lesión personal o daño patrimonial que se pudiera ejercer por virtud de las leyes de cualquiera otra jurisdicción.

9.        Divisibilidad. Si alguna disposición, término o condición del presente Contrato es inválido o no susceptible a ejecución por razón alguna, se considerará estar separado del presente Contrato y las restantes disposiciones, términos y condiciones del mismo no serán afectadas por ello y permanecerán con pleno efecto y vigor.

El suscrito Marinero ha leído, entiende y acepta los términos y condiciones de contratación laboral tal y como aparecen contenidos e incorporados en el presente contrato. El Marinero y Carnival acuerdan entre sí que las partes celebraron libremente el presente Contrato. Convienen además las partes que el texto del Contrato no puede interpretarse en contra del redactor porque representa los términos y condiciones laborales del Marinero que han sido mutuamente acordados y negociados. El Marinero reconoce su deber por separado e independiente de acatar todas las demás reglas, reglamentos y normas verbales o escritas de CCL y/o del operador del buque y/o del mando del barco.

En contraprestación por la oferta de empleo hecha aquí, el Marinero acepta todos y cada uno de los términos y condiciones del presente Contrato, que incluye la naturaleza de "a voluntad de las partes" que caracteriza esta contratación y las disposiciones y limitaciones contenidas en los párrafos 2 y 3 y las disposiciones de arbitraje/selección de derecho aplicable contenidas en los párrafos 7 y 8, aunque sin quedar limitado a éstas. El Marinero reconoce que CCL habría celebrado el presente Contrato de Marinero o de ninguna otra forma habría contratado a éste si el Marinero no hubiera aceptado tales términos y condiciones. Por lo tanto, habiendo CCL aceptado la solicitud de empleo y habiéndose convenido los términos y condiciones de empleo entre el Marinero y CCL, los infrascritos celebran el presente Contrato de Marinero hoy día __04.__ de _Diciembre_ de _05_ .

Firma: _Lindel Nelson_                         Firma: _____
       Firma del Marinero                               Representante por CCL

LINDEL ARVIN NELSON WATSON  /  226046                    249515

Escribir en letra de molde                      Escribir en letra de molde
Nombre/No. de identificación del tripulante      Nombre/No. de identificación del tripulante

Rev. 23/mayo/05 - Arbitraje                                      Iniciales ____

IN THE CIRCUIT COURT OF THE 11th
JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

LINDEL NELSON WATSON,

   Plaintiff,

v.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINES,

   Defendant.

_____/

CASE NO.    DIVISION   09-51843CA 08

FLORIDA BAR # 0629243

8/18/09  3:00pm

THE STATE OF FLORIDA:

To All and Singular the Sheriffs of the State:

YOU ARE HEREBY COMMANDED to serve this summons and a copy of the complaint or
petition in this action on defendant: CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE
LINES.
By serving:    ARNALDO PEREZ
            3655 NW 87th Avenue
            Miami, FL 33178-2428
As registered agent

Each defendant is required to serve written defenses to the complaint or petition on Plaintiff's
attorneys, to wit: MEISTER LAW LLC whose address is: Courthouse Tower, Suite 750, 44
West Flagler Street, Miami, FL 33130: Telephone: (305) 590-5570.

within 20 days after service of this summons on that defendant, exclusive of the day of service,
and to file the original of the defenses with the Clerk of this Court either before service on
Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be
entered against that defendant for the relief demanded in the complaint or petition.

WITNESS my hand and the seal of said Court on JUL 1 0 2009_____.

            HARVEY RUVIN
            as Clerk of said Court
            by ALBA DE LA SIERRA
              as Deputy Clerk
              (Court Seal)



EXHIBIT
B

IN THE CIRCUIT COURT OF THE 11th
JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

LINDEL NELSON WATSON,                    CASE NO.            **09 - 5 1 8 4 3 CA 08**

      Plaintiff,

v.

CARNIVAL CORPORATION                     THE ORIGINAL FILED
d/b/a CARNIVAL CRUISE LINES,             ON  JUL 1 0 2009
                                         IN THE OFFICE OF
      Defendant.                         CIRCUIT COURT DADE CO F
_____/                   CIVIL DIVISION

## COMPLAINT, DEMAND FOR JURY TRIAL WITH INTERROGATORIES, REQUEST FOR PRODUCTION, AND REQUEST FOR ADMISSIONS

Plaintiff sues Defendant and alleges:

    1. This is an action seeking damages in excess of $15,000.00.

    2. Defendant, at all times material hereto, personally or through an agent;

    a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    b. Were engaged in substantial activity within this state;

    c. Operated vessels in the waters of this state;

    d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

    e. The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state.

    3. Defendant is subject to the jurisdiction of the Courts of this state.

4. The causes of action asserted in this Complaint arise under the Jones Act, 46 U.S.C. Section 30104, and the General Maritime Law of the United States.

5. At all times material hereto, Defendant owned, operated, managed, maintained and/or controlled the vessel Carnival Destiny and the other Carnival vessels Plaintiff worked aboard. These vessels were registered in a flag of convenience country.

6. At all times material hereto, Plaintiff's employer was an agent of the shipowner and/or ship operator.

## COUNT I
## JONES ACT NEGLIGENCE

7. Plaintiff realleges, incorporates by reference, and adopts paragraphs one through six as though they were originally alleged herein.

8. On or about August 1, 2006, Plaintiff was employed by Defendant as a seaman and was a member of the vessel's crew. The vessel was in navigable waters.

9. It was the duty of Defendant to provide Plaintiff with a safe place to work.

10. On or about the above referenced date, Plaintiff was injured while aboard the vessel as follows: Plaintiff injured his left knee while cleaning a passenger cabin. After Plaintiff was injured, Defendant required him to continue working and Defendant did not provide him with prompt, proper, or adequate medical treatment which caused him injuries and/or aggravated his injuries. Furthermore, Plaintiff's left hand/arm; right hand/arm; neck and back were injured due to repetitive and/or repetitive heavy lifting while performing his job duties including those as a cabin steward, cleaner and luggage duty. After Plaintiff suffered those injuries, Defendant required him to continue repetitive and/or repetitive heavy lifting duties and did not provide him with prompt, proper, or adequate medical treatment which caused him injuries and/or aggravated his injuries.

11. Plaintiff's injuries are due to the fault and negligence of Defendant, and/or its agents,

servants, and/or employees as follows:

    a. Failure to use reasonable care to provide and maintain a proper and adequate machinery, crew and equipment;

b. Failure to use reasonable care to provide Plaintiff a safe place to work;

c. Failure to promulgate and enforce reasonable rules and regulations to insure the safety and health of the employees and more particularly the Plaintiff, while engaged in the course of his employment on said vessel.

d. Failure to use reasonable care to provide Plaintiff a safe place to work due to: 1. Required Plaintiff to lift items which were too heavy for one person to safely lift, and/or; 2. Required Plaintiff to performed tasks without adequate time and/or assistance, and/or; 3. Failed to warn the Plaintiff of the dangers of doing repetitive and/or heavy lifting and/or performing tasks without adequate time and/or assistance and/or; 4. Failed to provide Plaintiff with a proper lifting belt or other similar back/knee support device, and/or; 5. Failed to provide Plaintiff with proper training and/or supervision with respect to repetitive and/or heavy lifting; 6. Failed to provide Plaintiff with proper training and/or supervision with respect to cleaning passenger cabins and/or joining passenger beds; and/or 7. Failed to provide adequate manpower to perform the work assigned to Plaintiff; and/or 8. Failed to provide Plaintiff with a trolley and/or mechanical devices to assist him with respect to heavy and/or repetitive lifting and/or other tasks; 9. Created a working environment where crew members are discouraged and/or unable to assist each other with duties, and/or 10. Perpetuating a working environment where crew members are discouraged and/or unable to assist each other in work duties; and/or 11. Failed to weigh and tag heavy luggage, all of which caused Plaintiff to become injured. After Plaintiff became injured: 12. Defendant required Plaintiff

to continue repetitive and/or heavy lifting duties; and/or 13. Sent Plaintiff back to work after his injuries on pain killers, and/or 14. Required the Plaintiff to work with injuries, and/or 15. Sent Plaintiff back to work after his initial injury while still injured and on pain killers, and/or 16. Created a work environment where crew members are encouraged to return to work with injuries, and/or 17. Required the Plaintiff to do repetitive and/or heavy lifting while injured, and/or 18. Failed to warn Plaintiff of the dangers of working with injuries, and/or 19. Failed to warn Plaintiff of the dangers of working injured on pain killers, 20. Failed to properly diagnose and/or treat Plaintiff's injuries; and/or 21. Failed to provide Plaintiff with prompt, proper and adequate medical treatment, all of which injured Plaintiff and/or aggravated Plaintiff's injuries.

e. Failure to provide adequate instruction, and supervision to crew members and Plaintiff;

f. Failure to provide prompt, proper, and adequate medical care which aggravated Plaintiffs injuries and caused him additional pain and disability;

g. Failure to provide Plaintiff and other crew members who were associated with plaintiff or plaintiff's incident giving rise to this action, reasonable hours of employment so as to not overwork them to the point of not being physically fit to carry out their duties. Defendants employees are overworked to the point of fatigue.

h. Defendant have failed to learn and apply the common and well known principles of industrial ergonomics on board the vessel;

i. Defendant used outmoded work methods and procedures and neglected modern material handling techniques;

j. Defendant failed to train workers properly, such as Plaintiff and the work crews are undersized. As a result Defendant is having small work crews doing jobs traditionally handled by larger crews;

k. Defendant failed to provide Plaintiff with mechanized aids commonly available in other heavy industries.

l. Seamen's work may have to take place outdoors at any hour and all weather conditions and in isolated locations, without the site safety precautions available to workers in other industries;

m. Failure to ascertain the cause of prior similar accidents so as to take measures to prevent their re-occurrence, and more particularly Plaintiff's accident;

n. Failure to follow sound management practices with the goal of providing Plaintiff a safe place to work.

o. Prior to Plaintiff's accident Defendant failed to investigate the hazards to Plaintiff and then take the necessary steps to eliminate the hazards, minimize the hazard or warn Plaintiff of the danger from the hazard.

p. Defendant failed to perform an adequate pre-employment physical on Plaintiff so as to determine the dangers to Plaintiff of working on the vessel.

q. Defendants failed to adhere to the Seafarers' Hours of Work and the Manning of Ships Convention, 1996: with respect to the hours of work and rest as well as other standards such as ILO 147.

r. Defendants failed to select and utilize competent, skilled and properly trained medical care providers with proper and adequate medical equipment with respect to the Plaintiff's medical care.

s. Defendants failed to provide plaintiff with enough sleeping time so as to cause plaintiff and the other crew members on the vessel the same physical and mental impairments as being drunk. These type of impairments have been documented in the Journal of Occupational and Environmental Medicine; 57:649-655 (October 2000).

t. Defendants failed to properly medically manage Plaintiff's medical care after Plaintiff was injured.

u. At all times material hereto, Defendant negligently failed to determine the hazards on the vessel to Plaintiff, failed to eliminate the hazard, failed to modify the hazard and failed to properly warn Plaintiff of the hazard. In addition, Defendant violated the International Safety Management Code and failed to have a proper, adequate and safe Safety Management System Manual. All of the above caused the Plaintiff to be injured.

12. Defendant knew of the foregoing conditions causing Plaintiff's accident and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care should have learned of them and corrected them.

13. As a result of the negligence of Defendant, the Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages, income lost in the past, and his working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition Plaintiff in the past and in the future has lost the fringe

benefits that come with Plaintiff's job, including but not limited to found, free food, free shelter, free medical care, free uniforms, vacation, and free air line ticket home and back.

WHEREFORE, Plaintiff demands all damages entitled by law and demands jury trial of all issues so triable.

## COUNT II
## UNSEAWORTHINESS

14. Plaintiff realleges, incorporates by reference and adopts paragraphs one through ten as though they were originally alleged herein.

15. On or about the previously stated date, Plaintiff was a seaman and a member of the crew of Defendant's vessel, which was in navigable waters.

16. At all times material hereto, the vessel was owned, managed, operated and/or controlled by Defendant.

17. Defendant had the absolute nondelegable duty to provide Plaintiff with a seaworthy vessel.

18. On or about the previously stated date the unseaworthiness of Defendant's vessel was a legal cause of injury and damage to Plaintiff by reason of the following:

a. The vessel was unsafe and unfit due to the conditions created by Defendant as follows: 1. Required Plaintiff to lift items which were too heavy for one person to safely lift, and/or; 2. Required Plaintiff to performed tasks without adequate time and/or assistance, and/or; 3. Failed to warn the Plaintiff of the dangers of doing repetitive and/or heavy lifting and/or performing tasks without adequate time and/or assistance and/or; 4. Failed to provide Plaintiff with a proper lifting belt or other similar back/knee support device, and/or; 5. Failed to provide Plaintiff with proper training and/or supervision with respect to repetitive and/or heavy lifting; 6. Failed to provide Plaintiff with proper training and/or supervision with

respect to cleaning passenger cabins and/or joining passenger beds; and/or 7. Failed to provide adequate manpower to perform the work assigned to Plaintiff; and/or 8. Failed to provide Plaintiff with a trolley and/or mechanical devices to assist him with respect to heavy and/or repetitive lifting and/or other tasks; 9. Created a working environment where crew members are discouraged and/or unable to assist each other with duties, and/or 10. Perpetuating a working environment where crew members are discouraged and/or unable to assist each other in work duties; and/or 11. Failed to weigh and tag heavy luggage, all of which caused Plaintiff to become injured. After Plaintiff became injured: 12. Defendant required Plaintiff to continue repetitive and/or heavy lifting duties; and/or 13. Sent Plaintiff back to work after his injuries on pain killers, and/or 14. Required the Plaintiff to work with injuries, and/or 15. Sent Plaintiff back to work after his initial injury while still injured and on pain killers, and/or 16. Created a work environment where crew members are encouraged to return to work with injuries, and/or 17. Required the Plaintiff to do repetitive and/or heavy lifting while injured, and/or 18. Failed to warn Plaintiff of the dangers of working with injuries, and/or 19. Failed to warn Plaintiff of the dangers of working injured on pain killers, 20. Failed to properly diagnose and/or treat Plaintiff's injuries; and/or 21. Failed to provide Plaintiff with prompt, proper and adequate medical treatment, all of which injured Plaintiff and/or aggravated Plaintiff's injuries.

b. The vessel was not reasonably fit for its intended purpose;

c. The vessel's crew was not properly trained, instructed or supervised;

d. The vessel did not have a fit crew;

e. The vessel did not have adequate manpower for the task being performed;

f. The crew and Plaintiff were overworked to the point of being exhausted and not physically

fit to carry out their duties.

19. As a result of the unseaworthiness of the vessel, the Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages, income lost in the past, and Plaintiff's working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition Plaintiff in the past and in the future has lost the fringe benefits that come with Plaintiff's job, including but not limited to found, free food, free shelter, free medical care, free uniforms, vacation, and free air line ticket home and back.

WHEREFORE, Plaintiff demands all damages entitled by law and demands jury trial of all issues so triable.

## COUNT III
## FAILURE TO PROVIDE MAINTENANCE AND CURE

20. Plaintiff realleges, incorporates by reference, and adopts paragraphs one through ten as though they were originally alleged herein.

21. On or about the previously stated date, Plaintiff while in the service of the vessel as a crew member was injured.

22. Under the General Maritime Law and by operation of treaty, Plaintiff, as a seaman, is entitled to recover maintenance and cure from Defendant, until he is declared to have reached

maximum possible cure. This includes unearned wages (regular wages, overtime, vacation pay and tips), which are reasonably anticipated to the end of the contract or voyage which ever is longer.

23. Defendant did not timely diagnose and/or treat Plaintiff's injuries and required him to continue to work injured. Defendant failed to provide Plaintiff with prompt, proper and adequate medical treatment for his injuries and other injuries/illnesses (including but not limited to Plaintiff's knees, left hand/arm; right hand/arm; neck and back) developed while in the service of the vessel. Defendant failed to provide Plaintiff with timely maintenance and cure benefits. Defendant prematurely terminated Plaintiff's maintenance and cure benefits. Defendant failed to re-instate Plaintiff's maintenance and cure benefits. Defendant failed to follow the doctor's recommendations with regard to Plaintiff's medical care and restrictions. Defendant failed to provide the Plaintiff with medical care recommended by the doctor(s). To date, the Defendant has failed to provide Plaintiff with the recommended surgery to remove the screws in his knee.

24. Defendant willfully and callously delayed, failed and refused to pay Plaintiff's entire maintenance and cure so that Plaintiff has become obligated to pay the undersigned a reasonable attorney's fee. In addition Defendant is late in paying the maintenance and cure.

25. Defendant's failure to pay Plaintiff's entire maintenance and cure is willful, arbitrary, capricious, and in callous disregard for Plaintiff's rights as a seaman. As such, Plaintiff would be entitled to attorney's fee under the General Maritime Law of the United States. Further Defendant unreasonably failed to pay or provide Plaintiff with maintenance and cure which aggravated his condition and caused Plaintiff to suffer additional compensatory damages including but not limited to the aggravation of Plaintiff's physical condition, disability, pain and suffering, reasonable fear of developing future physical and medical problems, mental anguish, loss of enjoyment of life, feelings of economic insecurity as well as lost earnings or earning capacity, and medical and hospital

expenses in the past and into the future.

WHEREFORE, Plaintiff demands all damages entitled by law, attorneys fees and demands jury trial of all issues so triable.

## COUNT IV
## FAILURE TO TREAT

26 Plaintiff realleges, incorporates by reference and adopts paragraphs one through ten as though originally alleged herein.

27 On or about the previously stated date, Plaintiff was employed by Defendant as a seaman and was a member of the vessel's crew. The vessel was in navigable waters.

28 It was the duty of Defendant to provide Plaintiff with prompt, proper and adequate medical care.

29 Defendant through the ship's physicians, and/or shoreside physicians and nurses negligently failed to promptly provide Plaintiff with prompt, proper, adequate, and complete medical care. This conduct includes, but is not limited to:

a. Defendant not giving Plaintiff adequate and prompt medical care after his initial injuries and/or when he reported pain and problems from his injuries; and/or

b. Defendant sending Plaintiff back to work on pain killers after he became injured which injured Plaintiff and/or aggravated his injuries and made them worse, and/or

c. Defendant not adequately diagnosing the Plaintiff, which led to inadequate care, all of which aggravated his condition and/or

d. Failing to follow the doctor's recommendations for Plaintiff's treatment and/or rest and/or restrictions.

e. Defendant prematurely terminating Plaintiff's medical care and not providing him with all the recommended medical care.

f. Plaintiff's damage and/or other complications from the surgery and/or medical treatment.

g. Failing to provide Plaintiff with medical treatment for his other injuries/illness (including but not limited to Plaintiff's knees, left hand/arm; right hand/arm; neck and back) which developed while Plaintiff was in the service of the vessel.

h. Failing to provide Plaintiff with the recommended surgery to remove the screws in his knee.

30. As a direct and proximate result of Defendants' failure, Plaintiff suffered additional pain, disability and/or Plaintiff's recovery was prolonged.

31. In addition, the Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred additional medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages, income lost in the past, and Plaintiff's working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

32. This Count is alleged separately from Jones Act Negligence pursuant to <u>Joyce v. Atlantic Richfield Company</u>, 651 F.2d 676 (10th Cir. 1981) which states, in part, "Negligent failure to provide prompt medical attention to a seriously injured seaman gives rise to a separate claim for relief [for which separate damages are awardable]."

WHEREFORE, Plaintiff demands all damages entitled by law and demands jury trial of all issues so triable.

## COUNT V
## WAGES AND PENALTIES
### 46 USCA SECTION 10313

33.     Plaintiff realleges, incorporates by reference, and adopts paragraphs one through six as though originally alleged herein.

34. At all times material hereto, Plaintiff was employed as a seaman in the service of the vessel.

35. While in the service of the ship, Plaintiff performed all the work required of him, and carried out the orders given by his superiors.

36. Plaintiff was discharged without any lawful, just or sufficient cause. At the time of Plaintiff's discharge, the vessel was in a port of the United States.

37. At the time of Plaintiff's discharge, Defendant did not pay Plaintiff all of his earned wages, including reimbursement of deductions previously made from Plaintiff's wages. Defendant has sole custody and control of Plaintiffs wage records and personnel file. These documents are needed by Plaintiff to review to show exact dates and amounts with respect to earned wages owing to Plaintiff and deductions made from such earned wages.

38. At the time of Plaintiff's discharge, Plaintiff demanded all his wages, including reimbursement of deductions made from Plaintiff's earned wages.

39. Defendant refused to pay Plaintiff all his earned wages or reimburse Plaintiff for the deductions made therefrom, without sufficient cause.

40. Under 46 U.S.C.A. Section 10313, Plaintiff is entitled to his earned wages, deductions, and two days wages for each day payment is delayed.

WHEREFORE, Plaintiff demands judgment against Defendant for damages, wage penalties, attorney's fees and interest as permitted by law. Plaintiff also demands trial by jury.

MEISTER LAW, LLC
Courthouse Tower, Suite 750
44 West Flagler Street
Miami, Florida 33130
Phone: (305) 590-5570
Fax: (305) 675-3787

By_____
        TONYA J. MEISTER
        FLORIDA BAR NO.: 0629243

⬿JS 44  (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

**09-22678**

**I. (a) PLAINTIFFS**

LINDEL NELSON WATSON

**(b)** County of Residence of First Listed Plaintiff    Foreign
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Tonya J. Meister, Esq., Meister Law, LLC
Courthouse Tower, Suite 750, 44 West Flagler Street
Miami, Florida 33130

**DEFENDANTS**

CARNIVAL CORPORATION

SEP 0 9 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY) of FLA. – MIAMI

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
LAND INVOLVED.

Attorneys (If Known)

Curtis M. Mitchell, Esq. (Fla. Bar No.: 0032808)
Carnival Corporation, 3655 NW 87th Avenue, Miami, FL 33178

CIV-SEITZ

MAGISTRATE JUDGE
O'SULLIVAN

**(d)** Check County Where Action Arose:  ✓ MIAMI- DADE   ☐ MONROE   ☐ BROWARD   ☐ PALM BEACH   ☐ MARTIN   ☐ ST. LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE   ☐ HIGHLANDS

| II. BASIS OF JURISDICTION (Place an "X" in One Box Only) | III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only) | | | | |
|---|---|---|---|---|---|
| | | PTF | DEF | | PTF | DEF |
| ☐ 1  U.S. Government Plaintiff | ✓ 3  Federal Question (U.S. Government Not a Party) | Citizen of This State  ☐ 1  ☐ 1 | Incorporated or Principal Place of Business In This State  ☐ 4  ✓ 4 | | |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State  ☐ 2  ☐ 2 | Incorporated and Principal Place of Business In Another State  ☐ 5  ☐ 5 | | |
| | | Citizen or Subject of a  ✓ 3  ☐ 3  Foreign Country | Foreign Nation  ☐ 6  ☐ 6 | | |

09cv22678 / SEITZ / O'SULLIVAN

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☒ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. Security | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | ☐ 900 Appeal of Fee Determination |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☐ 1 Original Proceeding   ✓ 2 Removed from State Court   ☐ 3 Re-filed- (see VI below)   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

| VI. RELATED/RE-FILED CASE(S). | (See instructions second page): | a) Re-filed Case ☐ YES ☐ NO   b) Related Cases ☐ YES ☐ NO |
| | | JUDGE                                        DOCKET NUMBER |

**VII. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

Removal of Plaintiff's State Court action to seek enforcement of arbitration agreement

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

| VIII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ | CHECK YES only if demanded in complaint: |
| | | | JURY DEMAND:  ✓ Yes  ☐ No |

| ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE | SIGNATURE OF ATTORNEY OF RECORD | DATE  September 9, 2009 |

FOR OFFICE USE ONLY

AMOUNT $350.00     RECEIPT # 1008050

9/09/09